UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF WASHINGTON
AT SEATTLE

AMAZON.COM, INC., et al.,

Plaintiffs,

v.

MUAMMER BAKAN, et al.,

Defendants.

CASE NO. C24-616 MJP

ORDER GRANTING PLAINTIFFS'
MOTION FOR DEFAULT
JUDGMENT AND PERMANENT
INJUNCTION

This matter comes before the Court on Plaintiffs' Motion for Default Judgment and

Permanent Injunction. (Dkt. No. 53.) Having reviewed Plaintiffs' Motion and all supporting

materials, the Court GRANTS the Motion, ENTERS default judgment against the Defendants

Muammer Bakan, Osman Cellik, Mustafa Cenan, Serhat Dag, Ogun Dalka, Ayce Idil Dis, Aygul

Durgun, Erdem Karaman, Levent Keskin, Haci Ali Orcan, Mesut Ozcelik, Gulcihan Salli, Sahin

Salli, Nihat Telli, Ceylan Ulku, Ramazan Ulku, Engin Ulutas, Yusef Unvermis, Selcuk Yalcin,

and Omer Turgut Yuce (together "Defendants"), and PERMANENTLY ENJOINS Defendants

on the terms set forth in this Order. The Court notes that Plaintiffs have dismissed their claims

1  against the following individuals named in the Complaints: Fatma Nurten Sanlier, Enes Ceylan,

2  Mumtaz Kerem Nayman, and Does 1-10.

3  **BACKGROUND**

4      Plaintiff Seiko Epson Corporation, and its subsidiary, Plaintiff Epson America, Inc.

5  (together "Epson") design, manufacture and sell a variety of electronic goods internationally.

6  (Complaint ¶ 3 (Dkt. No. 1).) Much of Epson's business focuses on the production and

7  distribution of Epson ink cartridges, bottles, and packs for Epson printers, and it has registered

8  five trademarks that it uses in connection with the sale of Epson-branded products in the United

9  States. (Id. ¶¶ 3-5.) From January 2023 to February 2024, Defendants sold the counterfeit Epson-

10 branded and trademarked products on the Amazon.com online store that Plaintiffs Amazon.com,

11 Inc. and Amazon.com Services LLC own and operate (together "Amazon"). (Id. ¶ 6.) Plaintiffs

12 contend that the Defendants willfully sold at least $1,937,478 worth of counterfeit Epson-

13 branded products through Amazon's store between August January 2023 and February 2024.

14 (Declaration of Robert Garrett ¶ 3 (Dkt. No. 55).) And Amazon notes that after it shut down

15 Defendants' seller accounts on its online store, it offers $1,397,663 in refunds to customers who

16 purchased Epson-branded goods from Defendants' seller accounts. (Id.¶ 4.)

17     Plaintiffs pursue the following claims: (1) Epson pursues trademark infringement and

18 counterfeiting claims pursuant to 15 U.S.C. § 1114 (Compl. ¶¶ 70-76); (2) Epson pursues false

19 designation of origin and false advertising claims pursuant to 15 U.S.C. § 1125(a) (Id. ¶¶ 77-85);

20 (3) Amazon pursues a false designation of origin claim pursuant to 15 U.S.C. § 1125(a) (Id. ¶¶

21 86-92); (4) Plaintiffs pursue Washington Consumer Protection Act claims (Id. ¶¶ 93-97); and (5)

22 Amazon.com Services LLC alone pursues a breach of contract claim (Id. ¶¶ 98-103).

23

24

1    In addition to the allegations in the Complaint, which the Court accepts as true, an Epson

2    representative states that Epson conducted test purchases of Epson-branded products from the

3    selling accounts associated with each Defendant from the Amazon.com store. (Declaration of

4    Carla Leguia ¶ 6 (Dkt. No. 56).) Epson determined that the Epson-branded products were

5    counterfeit. (Id.) The Epson representative "believe[s] that Defendants' misuse of the Epson

6    Trademarks deceived customers into believing that they were buying authentic Epson products

7    when the goods were actually counterfeit." (Id. ¶ 7.) The Epson representative also states that

8    "[b]y selling counterfeit Epson-branded products, Defendants diverted legitimate sales that

9    would have otherwise been made by Epson" and that this has harmed Epson's reputation and

10    goodwill. (Id.)

11    Plaintiffs have served Defendants and obtained entry of default. (Dkt. Nos. 15-33, 36-38,

12    43.) Plaintiffs now move for default judgment and entry of a permanent injunction. The Court

13    notes that Plaintiffs are not moving for judgment on their false advertising claims, which they

14    agree to voluntarily dismiss without prejudice. (Mot. at 7 n.4.)

15    **ANALYSIS**

16    **A.    Legal Standard**

17    The Court has discretion to default judgment. Fed. R. Civ. P. 55(b); see Alan Neuman

18    Prods., Inc. v. Albright, 862 F.2d 1388, 1392 (9th Cir. 1988). "Factors which may be considered

19    by courts in exercising discretion as to the entry of a default judgment include: (1) the possibility

20    of prejudice to the plaintiff, (2) the merits of plaintiff's substantive claim, (3) the sufficiency of

21    the complaint, (4) the sum of money at stake in the action; (5) the possibility of a dispute

22    concerning material facts; (6) whether the default was due to excusable neglect, and (7) the

23    strong policy underlying the Federal Rules of Civil Procedure favoring decisions on the merits."

24

1  Eitel v. McCool, 782 F.2d 1470, 1471–72 (9th Cir. 1986). In performing this analysis, "the

2  general rule is that well-pled allegations in the complaint regarding liability are deemed true."

3  Fair Hous. of Marin v. Combs, 285 F.3d 899, 906 (9th Cir. 2002) (quotation and citation

4  omitted). And "[t]he district court is not required to make detailed findings of fact." Id.

5  **B.    Jurisdiction**

6          Before entering default judgment, the Court must assure itself that it has subject matter

7  jurisdiction and personal jurisdiction over Defendants.

8          There is little doubt that the Court has subject matter jurisdiction over Plaintiffs' claims.

9  Plaintiffs brings claims under various federal laws, which fall within the Court's original

10  jurisdiction pursuant to 28 U.S.C. § 1331 and 28 U.S.C. § 1338(a). And the Court has

11  supplemental jurisdiction over Plaintiffs' state-law claim pursuant to 28 U.S.C. § 1367(a).

12          The Court also finds that it has personal jurisdiction over Defendants, who are

13  nonresidents. First, Plaintiffs have alleged that Defendants agreed to Amazon Services' Business

14  Solutions Agreement, which required Defendants to consent to jurisdiction in this Court for

15  claims involving the misuse of intellectual property rights in the Amazon store. See Chan v.

16  Soc'y Expeditions, Inc., 39 F.3d 1398, 1406–07 (9th Cir. 1994); (Compl. ¶¶ 11, 37-41, 56, 99,

17  Ex. B.). This alone satisfies the Court that it has personal jurisdiction. Second, the Court finds

18  that it has personal jurisdiction due to Defendants' purposeful direction of its activities in this

19  forum, pursuant to Fed. R. Civ. P. 4(k)(2), the federal long-arm statute. (See Compl. ¶ 38.) Under

20  Rule 4(k)(2), personal jurisdiction may be established over a defendant if the claims arise under

21  federal law and: "(A) the defendant is not subject to jurisdiction in any state's courts of general

22  jurisdiction; and (B) exercising jurisdiction is consistent with the United States Constitution and

23  laws." Fed. R. Civ. P. 4(k)(2). To measure whether the exercise of personal jurisdiction is

24

ORDER GRANTING PLAINTIFFS' MOTION FOR DEFAULT JUDGMENT AND PERMANENT
INJUNCTION - 4

1   consistent with the Constitution, the Court engages in a "due process analysis [that] is nearly

2   identical to the traditional personal jurisdiction analysis with one significant difference: rather

3   than considering contacts between the [defendant] and the forum state, we consider contacts with

4   the nation as a whole." Lang Van, Inc. v. VNG Corp., 40 F.4th 1034, 1039 (9th Cir. 2022)

5   (citation and quotation omitted). To satisfy due process in this context, Plaintiffs must

6   demonstrate that: (1) the nonresident defendant has either purposefully directed his activities at

7   the United States or purposefully availed himself of the privilege of conducting activities in the

8   forum; (2) the claim arises out of or relates to the defendant's forum-related activities; and (3)

9   the exercise of jurisdiction comports with fair play and substantial justice. Schwarzenegger v.

10  Fred Martin Motor Co., 374 F.3d 797, 802 (9th Cir. 2004). If Plaintiffs satisfy the first two

11  elements, the burden shifts to Defendants to make a compelling case that the exercise of

12  jurisdiction would not be reasonable. Id. To establish "purposeful direction," the Court applies

13  the three-part "effects" test from Calder v. Jones, 465 U.S. 783 (1984), which requires that the

14  defendant must have "(1) committed an intentional act, (2) expressly aimed at the forum state,

15  (3) causing harm that the defendant knows is likely to be suffered in the forum state." Mavrix

16  Photo, Inc. v. Brand Techs., Inc., 647 F.3d 1218, 1228 (9th Cir. 2011) (quotation and citation

17  omitted).

18          The Court finds that Plaintiffs have satisfied the requisite elements of Rule 4(k)(2).

19  Plaintiffs pursue claims under federal law against Defendants, who are outside of any state

20  court's general jurisdiction. And the Court finds that the exercise of personal jurisdiction

21  comports with the Constitution. The Court points to three factors supporting this latter finding.

22          First, Defendants purposefully directed their activities at the United States. All three

23  elements of the "effects" test are satisfied. One, Defendants used their Amazon seller accounts to

24

ORDER GRANTING PLAINTIFFS' MOTION FOR DEFAULT JUDGMENT AND PERMANENT
INJUNCTION - 5

1  advertise the sale of the counterfeit Epson products. Two, Defendants directed the counterfeit

2  Epson products to consumers in the United States by using Amazon's website, which targets

3  American buyers. Three, it was foreseeable that Defendants' marketing and sales of the

4  counterfeit Epson products would harm Amazon and Epson in the United States, where all but

5  Seiko Epson Corp. are headquartered.

6       Second, Plaintiffs' claims arise out of Defendants' forum-based activities. The Ninth

7  Circuit "relies on a 'but for' test to determine whether a particular claim arises out of forum-

8  related activities and thereby satisfies the second requirement for specific jurisdiction. Ballard v.

9  Savage, 65 F.3d 1495, 1500 (9th Cir. 1995). Plaintiffs have satisfied this by showing that their

10  claims would not exist but-for Defendants' sale of counterfeit Epson products and their decision

11  to target consumers in the United States.

12       Third, because Plaintiffs have satisfied the first two prongs of personal jurisdiction under

13  Rule 4(k)(2), the burden shifts to Defendants to show personal jurisdiction is not reasonably

14  exercised here. By failing to appear in this matter, Defendants have conceded that the exercise is

15  reasonable. But for the sake of completeness, the Court has considered this factor and finds that

16  the exercise of personal jurisdiction is reasonable. The Court does so by balancing the following

17  factors:

18       (1) the extent of a defendant's purposeful interjection; (2) the burden on the defendant in
         defending in the forum; (3) the extent of conflict with the sovereignty of the defendant's
19       state; (4) the forum state's interest in adjudicating the dispute; (5) the most efficient
         judicial resolution of the controversy; (6) the importance of the forum to the plaintiff's
20       interest in convenient and effective relief; and (7) the existence of an alternative forum.

21  Rio Properties, Inc. v. Rio Int'l Interlink, 284 F.3d 1007, 1021 (9th Cir. 2002). The balance of

22  these factors shows that that the exercise of personal jurisdiction is reasonable. Defendants

23  purposefully directed their activities at the United States. There is no evidence of the burden on

24

ORDER GRANTING PLAINTIFFS' MOTION FOR DEFAULT JUDGMENT AND PERMANENT
INJUNCTION - 6

Defendants in defending themselves in this Court or conflicts with the sovereignty of a foreign state. The United States has an interest in making sure that Plaintiffs' valid intellectual property rights are protected and this forum can efficiently resolve the conflict. And Plaintiffs have an interest in obtaining convenient and effective relief in this Court where there are no alternative fora identified. Accordingly, the Court finds the exercise of personal jurisdiction to be reasonable.

**C.    Eitel Factors Favor Default Judgment**

The Court reviews the Eitel factors to assess whether default judgment should be entered and in what specific amounts. On balance, the seven Eitel factors weigh in favor of entry of default judgment in Plaintiffs' favor.

**1.    Factor One: Prejudice to Plaintiffs**

Without entry of default judgment Plaintiffs will be prejudiced. Plaintiffs have attempted to litigate this case and vindicate their rights under federal and state law against Defendants. Defendants have failed to appear or participate in this litigation despite being served through alternative means. Plaintiffs face prejudice by not being able to obtain complete relief on their claims against Defendants without entry of default judgment. This factor weighs in favor of granting default judgment.

**2.    Factors Two and Three: Merits of Plaintiffs' Claims and Sufficiency of the Amended Complaint**

Plaintiffs have demonstrated the merit of their claims and the sufficiency of the Amended Complaint. The Court reviews each claim.

**a.    Trademark Infringement**

To prevail on a trademark infringement claim, Epson must establish: (1) a protected trademark, and (2) the use of that trademark by a party accused of infringing on the trademark is

likely to cause consumer confusion. See Levi Strauss & Co. v. Blue Bell, Inc., 778 F.2d 1352, 1354 (9th Cir. 1985). Federal registration of a mark provides prima facie evidence of the mark's validity and entitles the plaintiff to a strong presumption that the mark is protectable. See Yellow Cab Co. of Sacramento v. Yellow Cab of Elk Grove, Inc., 419 F.3d 925, 927-28 (9th Cir. 2005).

Accepting the allegations as true and reviewing the declaration from Epson's representative, the Court finds that Epson has proved its trademark infringement claim by demonstrating the following: (1) it owns the 5 Epson Trademarks (Compl. ¶¶ 4-5 & Ex. A; Leguia Decl. ¶¶ 3-4 & Ex. A); (2) it reviewed samples of products that it purchased from Amazon's website (Compl. ¶¶ 62-64; Leguia Decl. ¶ 6); and (3) it determined those products were counterfeit imitations of Epson-branded products that illegally bear the Epson Trademarks based on deviations from the authentic products' packaging and materials. (Id.) The Court finds entry of default on the claim proper.

**b.    False Designation of Origin Claims**

To prevail on their claims of false designation of origin, Plaintiffs must show Defendants "(1) use[d] in commerce (2) any word, false designation of origin, false or misleading description, or representation of fact, which (3) is likely to cause confusion or misrepresents the characteristics of his or another person's goods or services." Freecycle Network, Inc. v. Oey, 505 F.3d 898, 902 (9th Cir. 2007). Any person who believes they are likely to be damaged by such an act may sue. 15 U.S.C. § 1125(a); Lexmark Int'l, Inc. v. Static Control Components, Inc., 572 U.S. 118, 131–32 (2014).

Both Epson and Amazon have proved their false designation claims. Plaintiffs have shown that Defendants sold counterfeit imitations of Epson-branded products bearing the Epson trademarks. (Compl. ¶¶ 65-68, 80-81; Leguia Decl. ¶ 6.) This misuse of the trademarks was designed to deceive the public as to the authenticity of Defendants' products. (Id.) And

Defendant's use of the Epson trademarks harmed Epson's goodwill. (See Compl. ¶¶ 3-5, 82-83; Leguia Decl. ¶ 7.) Similarly, Defendants deceived Amazon about the authenticity of the counterfeit products it was advertising, marketing, offering, and selling through Amazon's website. As alleged, this violated Amazon Service's Seller Agreement. (Compl. ¶¶ 11, 56-58, 62-68, 88-90, 99 & Ex. B.) And Defendants' use of Amazon's website to sell its goods harmed Amazon's reputation and brand. (Compl. ¶¶ 42-49, 90.) And Amazon issued refunds of nearly $1.4 million in an attempt to repair the damage to its goodwill and reputation. (Garrett Decl. ¶ 4.) The Court finds entry of default on these claims proper.

### c.    CPA Claim

To prevail on their CPA claim, Plaintiffs must establish "(1) an unfair or deceptive act or practice, (2) occurring in trade or commerce, (3) affecting the public interest, (4) injury to a person's business or property, and (5) causation." Panag v. Farmers Ins. Co. of Wash., 166 Wn.2d 27, 37 (2009) (citing Hangman Ridge Training Stables, Inc. v. Safeco Title Ins. Co., 105 Wn.2d 778, 784 (1986)). "[A] claim under the Washington CPA may be predicated upon a per se violation of statute, an act or practice that has the capacity to deceive substantial portions of the public, or an unfair or deceptive act or practice not regulated by statute but in violation of public interest." Klem v. Wash. Mut. Bank, 176 Wn.2d 771, 787 (2013).

The Court agrees with Plaintiffs that they have stated a claim under the CPA. Defendants' sale of counterfeit products is an unfair and deceptive act that occurred in trade, affecting the public interest, and which has harmed Plaintiffs' goodwill. The Court finds entry of default on this claim proper.

### d.    Breach of Contract Claim

To prevail on its breach of contract claim, Amazon Services must show the breach of a valid contract and damages proximately caused by the breach. Nw. Indep. Forest Mfrs. v. Dep't

1    of Lab. & Indus., 78 Wn. App. 707, 712 (1995). Amazon Services has here provided sufficient

2    evidence of a valid and enforceable contract—the Business Solutions Agreement—that

3    Defendants breached in a variety of ways through their sale of counterfeit Epson products.

4    (Compl. ¶¶ 11, 39, 56-61, 69, 99, 101-03 & Ex. B.) And by paying refunds in the amount of

5    $1,397,663 for goods Defendants sold in violation of the Agreement, Amazon Services has

6    shown damages proximately caused by the breach. (See Garrett Decl. ¶ 4.) The Court finds entry

7    of default on this claim proper.

8         **3.    Factor Four: Sum of Money at Stake**

9         Amazon has determined that Defendants had aggregate sales of $1,937,478 in counterfeit

10   Epson products. Given the large size of the sales, this factor weighs in favor of default judgment.

11        **4.    Factor Five: Possibility of Dispute of Material Facts**

12        The Court finds little possibility that the core, material facts are in dispute. Not only have

13   Defendants failed to appear in this action, but Plaintiffs have provided detailed evidence in

14   support of their claims that is likely difficult to be rebutted. This factor favors entry of default

15   judgment.

16        **5.    Factor Six: Whether Default is Due to Excusable Neglect**

17        There is no evidence that Defendants' failure to appear is due to excusable neglect. This

18   factor favors entry of default judgment.

19        **6.    Factor Seven; Strong Policy in Favor of Decision on the Merits**

20        The Court maintains a strong policy preference in favor of resolution of Plaintiffs' claims

21   on the merits. But Defendant's decision not to appear in this case vitiates against this policy. This

22   factor weighs in favor of entry of default judgment.

23                                *    *    *

24

Having considered and balanced the Eitel factors, the Court finds that entry of default

judgment is proper on all claims. On this basis, the Court GRANTS the Motion.

**D.      Amount of the Default Judgment**

Epson asks the Court to award statutory damages against Defendants for their willful and

unauthorized use of Epson's trademarks in the amount of $5,812,434. (Mot. at 12-17.) Amazon

also seeks an award of damages on its false designation and breach of contract claims in the

amount of $1,397,663—the total it paid in refunds. (Id. at 18-21.) Plaintiffs do not seek damages

on their CPA claims. The Court reviews the requests.

Epson correctly notes they it may seek statutory damages between $1,000 to $2,000,000

per mark given that Defendants' failure to defend this action constitute an admission their

infringement of the two marks at issue was willful. (Mot. at 12 (citing 15 U.S.C. § 1117(c)(1);

Derek Andrew, Inc. v. Poof Apparel Corp., 528 F.3d 696, 702 (9th Cir. 2008).) Because there are

5 marks at issue, Epson may seek statutory damages ranging between $5,000 and $10,000,000.

See 15 U.S.C. § 1117(c)(1). Epson asks the Court to award statutory damages as to each

Defendant based on trebling the total sales of counterfeit Epson-branded products through the

seller account linked to each Defendant, for a total of $5,812,434 in damages. (See Mot. at 12-

17; Garrett Decl. ¶ 3.) This is apportioned between the Defendants as follows: (1) $124,824

against Muammer Bakan; (2) $212,520 against Osman Cellik; (3) $55,695 against Mustafa

Cenan; (4) $71,655 against Serhat Dag; (5) $351,480 against Ogun Dalka; (6) $644,913 against

Ayce Idil Dis; (7) $396,405 against Aygul Durgun; (8) $448,602 against Erdem Karaman; (9)

$768,543 against Levent Keskin; (10) $102,366 against Haci Ali Orcan; (11) $13,164 against

Mesut Ozcelik; (12) $43,863 against Gulcihan Salli; (13) $290,979 against Sahin Salli; (14)

$82,215 against Nihat Telli; (15) $477,531 against Ceylan Ulku; (16) $549,399 against Ramazan

Ulku; (17) $225,399 against Engin Ulutas; (18) $489,696 against Selcuk Yalcin; (19) $53,328 against Yusuf Unvermis and Omer Turgut Yuce; and (20) $409,857 against Omer Turgut Yuce. (Id.) The Court finds this damages request to be reasonable, in light of the nature of the deceptive scheme, the scope of the sales, the involvement of each Defendant, as well as the need for compensation, deterrence, and punishment. The Court therefore awards Epson damages in the amounts and allocations sought.

The Court also finds Amazon's request for damages against Defendants for the refunds it made to be reasonable and appropriate. The Court awards Amazon $1,397,663 in total damages, which are apportioned as follows: (1) $35,966 against Muammer Bakan; (2) $58,793 against Osman Cellik; (3) $14,709 against Mustafa Cenan; (4) $19,108 against Serhat Dag; (5) $0 (none) against Ogun Dalka; (6) $177,226 against Ayce Idil Dis; (7) $109,842 against Aygul Durgun; (8) $118,526 against Erdem Karaman; (9) $210,287 against Levent Keskin; (10) $27,821 against Haci Ali Orcan; (11) $3,764 against Mesut Ozcelik; (12) $11,398 against Gulcihan Salli; (13) $51,532 against Sahin Salli; (14) $12,095 against Nihat Telli; (15) $119,696 against Ceylan Ulku; (16) $151,457 against Ramazan Ulku; (17) $60,303 against Engin Ulutas; (18) $136,672 against Selcuk Yalcin; (19) $4,286 against Yusuf Unvermis and Omer Turgut Yuce; and (20) $74,182 against Omer Turgut Yuce. (See Garrett Decl. ¶ 4.)

**E.    Injunctive Relief**

The Court finds it appropriate to enter a permanent injunction against Defendants on the terms Plaintiffs request. "As a general rule, a permanent injunction will be granted when liability has been established and there is a threat of continuing violations." MAI Sys. Corp. v. Peak Computer, Inc., 991 F.2d 511, 520 (9th Cir. 1993). And the Lanham Act authorizes "the 'power to grant injunctions according to principles of equity and upon such terms as the court may deem

1  reasonable, to prevent the violation of any right' of the trademark owner." <u>Reno Air Racing</u>

2  <u>Ass'n., Inc. v. McCord</u>, 452 F.3d 1126, 1137 (9th Cir. 2006) (quoting 15 U.S.C. § 1116(a)).

3       A plaintiff seeking permanent injunctive relief must demonstrate: "(1) that it has suffered

4  an irreparable injury; (2) that remedies available at law, such as monetary damages, are

5  inadequate to compensate for that injury; (3) that, considering the balance of hardships between

6  the plaintiff and defendant, a remedy in equity is warranted; and (4) that the public interest

7  would not be disserved by a permanent injunction." <u>eBay, Inc. v. MercExchange, L.L.C.</u>, 547

8  U.S. 388, 391 (2006).

9       The Court finds that all four <u>eBay</u> factors favor entry of a permanent injunction. First,

10 based on the admitted allegations in the Amended Complaint, Defendants' trademark

11 infringement have caused irreparable harm to Plaintiffs' goodwill and reputation and have

12 caused them to incur expenses to prevent further damage. Second, Plaintiffs have shown that

13 monetary damages alone will not necessarily prevent Defendants from engaging in further

14 infringing conduct. Given Defendants' decision not to appear in this case, there can be no

15 assurances that they will no longer engage in the conduct at issue in this case. This satisfies the

16 Court that monetary damages alone are insufficient. Third, the equities favor Plaintiffs, who seek

17 to enjoin Defendants from engaging in illegal conduct that benefits only Defendants. This favors

18 Plaintiffs and the requested injunction. Fourth, an injunction prohibiting Defendants from

19 engaging in further conduct that infringes on Plaintiffs' trademarks will serve the public interest.

20 The Court GRANTS the Motion and ENTERS the following PERMANENT INJUNCTION

21 against Defendants and each of their officers, agents, servants, employees, and attorneys, and all

22 others in active concert or participation with them who receive actual notice of this Order from:

23       1.    Selling counterfeit or infringing products in Amazon's stores;

24

ORDER GRANTING PLAINTIFFS' MOTION FOR DEFAULT JUDGMENT AND PERMANENT INJUNCTION - 13

2.    Selling counterfeit or infringing products to Amazon or any Amazon affiliate;

3.    Manufacturing, importing, distributing, circulating, promoting offering to sell, or selling any product using Epson brand or trademarks, or which otherwise infringes Epson intellectual property, in any store or in any medium; and

4.    Assisting, aiding, or abetting any other person or business entity in engaging in or performing any of the activities listed in (1) through (3) above.

The Court also retains jurisdiction over this case for the purpose of enforcing this Order and Injunction.

## CONCLUSION

The Court finds that Plaintiffs are entitled to entry of default judgment in their favor and for an order enjoining Defendants from further conduct that violates the Trademark laws. As explained above, the Court GRANTS the Motion for Default Judgment and PERMANENTLY ENJOINS Defendants on the terms specified above. Plaintiffs' counsel is hereby directed to serve a copy of this Order and Injunction on Defendants.

The clerk is ordered to provide copies of this order to all counsel.

Dated August 14, 2025.

Marsha J. Pechman
United States Senior District Judge

ORDER GRANTING PLAINTIFFS' MOTION FOR DEFAULT JUDGMENT AND PERMANENT INJUNCTION - 14